## WILLIAM H. KNOWLTON *vs.* LEVI SEWALL.

A., who owned a wharf, and B., who owned a stone quarry, signed and sealed an agreement together, providing as follows: B. agreed to carry all the stone quarried on his premises, that was to be carried away in vessels, to A.'s wharf, for nine years, and pay four cents per ton wharfage; and to continue to carry all the stone quarried there, that was to be carried away in vessels, after the expiration of nine years, and pay five cents per ton wharfage. A. agreed to receive said sums in full compensation for the wharfage, and to furnish and prepare a place to deposit ballast, and to keep his wharf and dock in good repair. The agreements on each side were fulfilled for nine years, after which B. sold his quarry. *Held,* that A. had no right of action to recover for B.'s failure to carry to A.'s wharf the stone quarried after the sale of the quarry, and that evidence was incompetent to shew that the usual price of wharfage for the nine years was five cents a ton.

CONTRACT. The declaration alleged a failure on the part of the defendant to carry to the plaintiff's wharf a quantity of stone, according to the terms of the following agreement, signed and sealed by the parties:

" This identure, made this tenth day of December in the year of our Lord 1852, . . . witnesseth, that the said W. H. Knowlton, in consideration of the said Sewall's agreeing to carry all the stone quarried on his premises, that is to be carried away in vessels, on the said William H. Knowlton's wharf, for the space of nine years, commencing the 1st of February 1853, the said Knowlton agrees to receive as full compensation for wharfage four cents per ton for each and every ton of stone so carried away in vessels, the stone coming from said Sewall's quarry for the

space of nine years, commencing February 1st 1853. And the said Sewall on his part agrees to carry all stone on the said Knowlton's wharf, that is quarried on his premises, for the space of nine years, commencing February 1st 1853, that is to be carried away in vessels, and pay four cents per ton for wharfage for each and every ton of stone so carried away in vessels. And the said Sewall further agrees to continue to carry all stone that is quarried on his quarry that he now occupies on the said Knowlton's wharf, that is to be carried away in vessels, after the expiration of the nine years aforesaid, and pay the sum of five cents per ton for wharfage for each and every ton of stone so carried away in vessels, after the expiration of the nine years. And the said Knowlton further agrees to receive all stone coming from said Sewall's quarry, and to receive five cents per ton as full compensation for wharfage for each and every ton of stone carried away in vessels after the expiration of the nine years aforesaid. And the said Knowlton agrees to furnish and prepare a place near Short Beach, so called, to deposit rough stone or ballast. And the said Knowlton agrees that the said Sewall shall have as good a privilege on his wharf and landing as he now has, in proportion to the business he does, and that said Knowlton will keep his wharf and dock in good repair, by having suitable time to do it after such repair is needed.

" To all of which stipulations, covenants and agreements, we, the parties aforesaid, do hereby mutually bind ourselves, our heirs, executors and administrators, firmly by these presents."

At the trial in the superior court, before *Ames*, J., it appeared that the agreement was executed on both sides for nine years, and on the 10th of May 1862 the defendant sold his quarry to other persons, after which the stone quarried there was not carried to the plaintiff's wharf. The plaintiff offered to show that during the nine years after the making of the agreement the usual rate of wharfage was five cents a ton; but the judge rejected the evidence, and ruled that upon the above facts the plaintiff could not recover. A verdict was accordingly taken for the defendant, and the case was reported for the determination of this court.

*J. A. Gillis*, (*B. H. Smith* with him,) for the plaintiff.

*S. B. Ives, Jr.*, *&* *C. Sewall*, for the defendant.

Dewey, J. The rulings of the superior court upon the lega, effect of this somewhat anomalous contract seem to us to have been correct. We think that it must be understood, although very broad and unlimited in its language, to contemplate an arrangement only coextensive with the continued ownership, or at least possession, by the parties of their respective estates. It imposed no obligation on the plaintiff to continue perpetually to be the owner of his estate, nor upon the defendant to continue perpetually to be the owner of the estate upon which the stone quarry was situated. It was certainly a contract all the benefits of which to the plaintiff were wholly dependent upon the voluntary action of the defendant in carrying on the business of quarrying stone. If there were no stone quarried on the premises, then the plaintiff would have no profits from the contract; but no ground would exist for complaint for any breach of any obligation assumed by the defendant. The parties having made this contract with no provision as to the period of its limitation, the court must give it a reasonable construction. The rulings at the trial upon that point, and upon the effect of the evidence relied upon by the plaintiff to show that the defendant still continued to have the possession and control of the stone quarry, furnish no ground for setting aside the verdict.

*Judgment for the defendant.*